Filed in open court this 30th day of November 208.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,            )
                                     )
            Plaintiff,               )
                                     )
      v.                             )       Criminal Action No. 18-92-RGA
                                     )
FAST CARE MEDICAL AID UNIT, LLC, ▉   )
                                     )
            Defendant.               )

### MEMORANDUM OF PLEA AGREEMENT

Pursuant to discussions between the United States of America, by and through its attorneys, David C. Weiss, United States Attorney for the District of Delaware (the "USAO-DE"), and Robert F. Kravetz and Jennifer L. Hall, Assistant United States Attorneys, and the Defendant, FAST CARE MEDICAL AID UNIT, LLC (the "Defendant"), by and through its attorney, Eugene J. Maurer, Jr., and through its authorized representative, pursuant to authority granted by the Defendant's Board of Directors, hereby submit and enter into this plea agreement (the "Agreement"), pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The terms and conditions of this Agreement are as follows:

### THE DEFENDANT'S AGREEMENT

1. The Defendant agrees to knowingly waive indictment in the United States District Court for the District of Delaware, and pursuant to Fed. R. Crim. P. 11(c)(1)(C), to plead guilty to a one-count criminal Information charging it with Health Care Fraud, in violation of Title 18, United States Code, Section 1347. The Defendant further agrees to persist in that plea through sentencing and, as set forth below, to cooperate fully with the USAO-DE in any and all matters relating to the conduct described in this Agreement and the Statement of Facts attached hereto as

Exhibit 2 (the "Statement of Facts"), and any entity or individual referred to therein, as well as any and all matters related to the delivery of health care services, until the later of the date upon which all investigations, prosecutions, and proceedings, including those arising out of the False Claims Act Agreement (the "FCA Agreement") with Dr. Zahid Aslam and AMNA Medical Center, LLC (the "Related Health Care Parties") and the Defendant are concluded, or the expiration of one year from the date of this Agreement, whichever is later (the "Term").

2.    The Defendant understands that if it were to proceed to trial on Count One of the Information, the United States would have to prove beyond a reasonable doubt the following elements of the offense, that is, that:

- The Defendant devised or participated in a scheme to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of Medicare, Medicaid, and other health care benefit programs in connection with the delivery of or payment for health care benefits, items, or services;

- the Defendant acted with the intent to defraud; and

- Medicare and Medicaid were public plans or contracts, affecting commerce, under which medical benefits, items, or services were provided to any individual.

3.    The Defendant understands and agrees that this Agreement is between the USAO-DE and the Defendant and does not bind any other division, section, or office of the Department of Justice or any other federal, state, or local prosecuting, administrative, or regulatory authority. Nevertheless, the USAO-DE will bring this Agreement and the nature and quality of the conduct and cooperation of the Defendant and the Related Health Care Parties, to the attention of other prosecuting authorities or other agencies, if requested by the Defendant. By agreeing to provide

this information to such authorities, the USAO-DE is not agreeing to advocate on behalf of the Defendant or the Related Health Care Parties, but rather are agreeing to provide facts to be evaluated independently by such authorities.

4.      The Defendant agrees that this Agreement will be executed by an authorized corporate representative.  The Defendant further agrees that a resolution duly adopted by the Defendant's Board of Directors in the form attached to this Agreement as Exhibit 1 ("Certificate of Corporate Resolutions") authorizes the Defendant to enter into this Agreement and take all necessary steps to effectuate this Agreement, and that the signatures on this Agreement by the Defendant and its counsel are authorized by the Defendant's Board of Directors, on behalf of the Defendant.

5.      The Defendant agrees that it has the full legal right, power, and authority to enter into and perform all of its obligations under this Agreement.

6.      The USAO-DE enters into this Agreement based on the individual facts and circumstances-presented by this case, the Defendant, and the Related Health Care Parties, including:

a.   the Related Health Care Parties are entering into the FCA Agreement and have agreed to pay a total civil penalty of $3,070,000 in damages and penalties – $221,484.75 of which relates to the conduct described in the Statement of Facts;

b.   the Defendant and the Related Health Care Parties did not voluntarily and timely disclose to the USAO-DE the conduct described in the Statement of Facts;

c.   following the arrest of Dr. Aslam in June 2017 relating to bank fraud, however, counsel for the Defendant and the Related Health Care Parties undertook an extensive audit with a third-party firm to estimate the range of overpayment by Medicare and State Health Care Programs to the Related Health Care Parties (the "Third-Party Audit");

3

d. the Defendant and the Related Health Care Parties thereafter cooperated with the USAO-DE's investigation into health care fraud, including (i) conducting the Third-Party Audit; (ii) forwarding all of the underlying information and statistical data relating to the Third-Party Audit to the USAO-DE for its review; (iii) consenting to Dr. Aslam's exclusion from Medicare and State Health Care Programs, his surrender of his licenses to provide health care services, his divestiture of direct or indirect ownership or control over any entities delivering health care services, and his agreement not to serve as an officer or managing employee of any entity delivering health care services as those terms are defined in Section 1126(b) of the Social Security Act (Title 42, United States Code, Section 1320a-5); and (iv) entering into the FCA Agreement; and

e. the Defendant and the Related Health Care Parties have agreed to continue cooperating with the USAO-DE in any ongoing investigation of the conduct of the Defendant and the Related Health Care Parties, and their officers, directors, employees, agents, business partners, distributors, and consultants relating to health care fraud violations through sentencing and during the Term.

7. The Defendant agrees to abide by all terms and obligations of this Agreement as described herein, including, but not limited to, the following:

a. to plead guilty as set forth in this Agreement;

b. to abide by all sentencing stipulations contained in this Agreement;

c. to appear, through its duly appointed representatives, as ordered for all court appearances, and obey any other ongoing court order in this matter, subject to applicable United States and foreign laws, procedures, and regulations;

d. to commit no further crimes;

e. to be truthful at all times with the Court;

f.  to pay the applicable fine and special assessment;

g.  to cooperate fully with the USAO-DE as described in Paragraph 9;

h.  to not contest exclusion from participation in all Federally funded health care programs in any proceedings brought by the Office of Inspector General of the United States Department of Health and Human Services pursuant to Section 1128 of the Social Security Act (Title 42, United States Code, Section 1320a-7), and from participation in all Medicare and State health care programs under Section 1156 of the Social Security Act (Title 42, United States Code, Section 1320c-5); and

i.  to fulfill its obligations under the FCA Agreement and to cooperate with the Related Health Care Parties in fulfilling their obligation under the FCA Agreement.

8.  The Defendant shall cooperate fully with the USAO-DE in any and all matters relating to the conduct described in this Agreement and the Statement of Facts, and any individual or entity referred to therein, as well as any other matters related to possible health care fraud under investigation by the USAO-DE at any time during the Term, subject to applicable laws and regulations, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term. At the request of the USAO-DE, and subject to applicable laws and regulations, the Defendant shall also cooperate fully with other domestic or law enforcement and regulatory authorities and agencies in any investigation of the Defendant, the Related Health Care Parties or their affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to possible health care fraud under investigation by the USAO-DE at any time during the Term. The Defendant agrees that its cooperation pursuant to this paragraph shall be subject to applicable laws and regulations and shall include, but not be limited to, the following:

a.    The Defendant shall truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or the attorney work product doctrine with respect to its activities, those of the Related Health Care Parties and affiliates, and those of its present and former directors, officers, employees, agents, and consultants, including any evidence or allegations and internal or external investigations, concerning all matters relating to the conduct described in this Agreement and the Statement of Facts and other conduct under investigation by the USAO-DE about which the Defendant has any knowledge or about which the USAO-DE may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Defendant to provide to the USAO-DE, upon request, any document, record or other tangible evidence about which the USAO-DE may inquire of the Defendant.

b.    Upon request of the USAO-DE, the Defendant shall designate knowledgeable employees, agents or attorneys to provide to the USAO-DE the information and materials described in Paragraph 9(a) above on behalf of the Defendant. It is further understood that the Defendant must at all times provide complete, truthful, and accurate information.

c.    The Defendant shall use its best efforts to make available for interviews or testimony, as requested by the USAO-DE, present or former officers, directors, employees, agents and consultants of the Defendant and the Related Health Care Parties.

d.    With respect to any information, testimony, documents, records or other tangible evidence provided to the USAO-DE pursuant to this Agreement, the Defendant consents to any and all disclosures, subject to applicable law and regulations, to other governmental authorities of such materials as the USAO-DE, in its sole discretion, shall deem appropriate.

9.    During the term of the cooperation obligations provided for in Paragraph 8 of the Agreement, should the Defendant learn of any evidence or allegation of conduct that may

6

constitute a violation of health care fraud had the conduct occurred within the jurisdiction of the United States, the Defendant shall promptly report such evidence or allegation to the USAO-DE. At the end of the term of the cooperation obligations provided for in Paragraph 9 of the Agreement, the Defendant, by a duly authorized representative for the Defendant or the Parent Company, will certify to the USAO-DE that the Defendant has met its disclosure obligations pursuant to this Paragraph. Such certification will be deemed a material statement and representation by the Defendant to the executive branch of the United States for purposes of Title 18, United States Code, Section 1001, and it will be deemed to have been made in the District of Delaware.

10.     The Defendant agrees that any fine or restitution imposed by the Court shall be due and payable within ten business days of the entry of judgment following such sentencing hearing, and the Defendant will not attempt to avoid or delay payment. The Defendant further agrees to pay the Clerk of the Court for the United States District Court for the District of Delaware the mandatory special assessment of $400 within ten business days from the date of sentencing.

## THE UNITED STATES' AGREEMENT

11.     In exchange for the guilty plea of the Defendant and the complete fulfillment of all of its obligations under this Agreement, the USAO-DE agrees it will not file additional criminal charges against the Defendant relating to (a) any of the conduct described in the Statement of Facts or (b) any of the conduct described in the FCA Agreement. This Paragraph does not provide any protection against prosecution for any crimes, including health care fraud or related violations, made in the future by the Defendant, the Related Health Care Parties, or by any of the Defendant's officers, directors, employees, agents or consultants, whether or not disclosed by the Defendant pursuant to the terms of this Agreement. This Agreement does not close or preclude the investigation or prosecution of any natural persons, including any officers, directors, employees,

agents, or consultants of the Defendant or the Related Health Care Parties and their affiliates, subsidiaries, or joint ventures, who may have been involved in any of the matters set forth in the Information, the Statement of Facts, or in any other matters. The Defendant agrees that nothing in this Agreement is intended to release the Defendant from any or all of the Defendant's business and income tax liabilities and reporting obligations for any income not properly reported and/or legally or illegally obtained or derived.

## FACTUAL BASIS

12.    The Defendant is pleading guilty because the Defendant is guilty of the charge contained in the Information. The Defendant admits, agrees, and stipulates that the factual allegations set forth in the Information and the Statement of Facts are true and correct; that it is responsible for the acts of its officers, directors, employees, and agents described in the Information and the Statement of Facts; and that the Information and the Statement of Facts accurately reflect the Defendant's criminal conduct.

## THE DEFENDANT'S WAIVER OF RIGHTS, INCLUDING THE RIGHT TO APPEAL

13.    Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 limit the admissibility of statements made in the course of plea proceedings or plea discussions in both civil and criminal proceedings, if the guilty plea is later withdrawn. The Defendant expressly warrants that it has discussed these rules with its counsel and understands them. Solely to the extent set forth below, the Defendant voluntarily waives and gives up the rights enumerated in Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Specifically, the Defendant understands and agrees that any statements that it makes in the course of its guilty plea or in connection with the Agreement are admissible against it for any purpose in any United States federal criminal proceeding if, even though the USAO-DE have fulfilled all of their obligations

8

under this Agreement and the Court has imposed the agreed-upon sentence, the Defendant nevertheless withdraws its guilty plea.

14.     The Defendant is satisfied that the Defendant's counsel has rendered effective assistance. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as provided in this Agreement. The Defendant understands that the rights of criminal defendants include the following:

a.   the right to plead not guilty and to persist in that plea;

b.   the right to a jury trial;

c.   the right to be represented by counsel – and if necessary and authorized have the court appoint counsel – at trial and at every other stage of the proceedings;

d.   the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

e.   pursuant to Title 18, United States Code, Section 3742, the right to appeal the sentence imposed. Nonetheless, the Defendant knowingly waives the right to appeal or collaterally attack the conviction and any sentence within the statutory maximum described below (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatsoever except those specifically excluded in this Paragraph, in exchange for the concessions made by the United States in this Agreement. This Agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b). The Defendant also knowingly waives the right to bring any collateral challenge challenging either the conviction, or the sentence imposed in this case.

f.    The Defendant also hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5, United States Code, Section 552a.

g.    The Defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution related to the conduct described in the Statement of Facts or the Information, including any prosecution that is not time-barred on the date that this Agreement is signed in the event that: (a) the conviction is later vacated for any reason; (b) the Defendant violates this Agreement; or (c) the plea is later withdrawn, provided such prosecution is brought within one year of any such vacation of conviction, violation of agreement, or withdrawal of plea plus the remaining time period of the statute of limitations as of the date that this Agreement is signed.

h.    The USAO-DE is free to take any position on appeal or any other post-judgment matter.

i.    The parties agree that any challenge to the Defendant's sentence that is not foreclosed by this Paragraph will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver.

j.    Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the Defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

PENALTY

15.    The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1347, is:

10

   a. a fine of $500,000 or twice the gross pecuniary gain or gross pecuniary loss resulting from the offense, whichever is greatest, Title 18, United States Code, Section 1347 and Title 18, United States Code, Section 3571(c), (d);

   b. five years' probation, Title 18, United States Code, Section 3561(c)(1); and

   c. a mandatory special assessment of $400 per count, Title 18, United States Code, Section 3013(a)(2)(B), and restitution as ordered by the Court.

16. In this case, the parties agree that the gross pecuniary gain resulting from the offense is $221,484.75. Therefore, pursuant to 18 U.S.C. § 3571(d), the maximum fine that may be imposed is $500,000.00.

SENTENCING RECOMMENDATION

17. The parties agree that the Court must determine an advisory sentencing guideline range pursuant to the United States Sentencing Guidelines. The Court will then determine a reasonable sentence within the statutory range after considering the advisory sentencing guideline range and the factors listed in Title 18, United States Code, Section 3553(a). The parties' agreement herein to any guideline sentencing factors constitutes proof of those factors sufficient to satisfy the applicable burden of proof. The Defendant also understands that if the Court accepts this Agreement, the Court is bound by the sentencing provisions in Paragraph 20.

18. The USAO-DE and the Defendant agree that an application of the United States Sentencing Guidelines (U.S.S.G.) to determine the applicable fine range yields the following analysis:

   a. The 2016 U.S.S.G. are applicable to this matter.

   b. <u>Offense Level</u>. Based upon U.S.S.G. § 2B1.1, the total offense level is 21, calculated as follows:

11

| (a)(1) | Base Offense Level | 7 |
|---|---|---|
| (b)(1) | Pecuniary Gain More Than $150,000 | 10 |
| TOTAL | | 17 |

c. <u>Base Fine</u>. Based upon USSG § 8C2.4(a)(l), the base fine is $450,000

d. <u>Culpability Score</u>. Based upon USSG § 8C2.5, the culpability score is 3, calculated as follows:

| (a) | Base Culpability Score | 5 |
|---|---|---|
| (g)(l) | The organization fully cooperated in the investigation, and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct | -2 |
| TOTAL | | 3 |

e. <u>Calculation of Fine Range</u>

| Base Fine | $450,000.00 |
|---|---|
| Multipliers | 0.6 (min)/1.20 (max) |
| Fine Range | $270,000.00 (min)/ $500,000.00 (max) |

19.     Pursuant to the FCA Agreement, the Defendant and the Related Health Care Parties, directly or through an affiliate, have agreed to pay civil damages and penalties of $3,070,000 relating to the underlying conduct described herein.  Thus, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the USAO-DE and the Defendant agree that the following represents the appropriate disposition of the case.

a. <u>Disposition.</u> Pursuant to Fed. R. Crim. P. 11(c)(l)(C), the USAO-DE and the Defendant agree that the appropriate disposition of this case is as set forth above, and agree to recommend jointly that the Court impose a sentence requiring the Defendant to pay a criminal fine of

*On or before January 31, 2019*

$100,000.00 payable in full ~~within ten business days of such sentencing hearing~~ (the "recommended sentence"). The parties agree that, in light of the FCA Agreement, which requires the Related Health Care Parties to pay civil damages and penalties of $3,070,000 as a result of the misconduct committed by the Related Health Care Parties, as well as factors described in the FCA Agreement, a $100,000.00 fine should be imposed on the Defendant.

b. Mandatory Special Assessment. The Defendant shall pay to the Clerk of Court for the District of Delaware within ten (10) days of the time of sentencing the mandatory special assessment of $400.

c. Restitution. As of the date of this Agreement, the USAO-DE and the Defendant have not identified any victim qualifying for restitution beyond the amount set forth in the FCA Agreement and thus are not requesting an order of restitution beyond the amount set forth therein. The Defendant recognizes and agrees, however, that restitution is imposed at the sole discretion of the Court. The Defendant agrees to pay restitution as part of this Agreement in the event restitution is ordered by the Court.

20.     This Agreement is presented to the Court pursuant to Fed. R. Crim. P. 11(c)(1)(C). The Defendant understands that, if the Court rejects this Agreement, the Court must: (a) inform the parties that the Court rejects the Agreement; (b) advise the Defendant's counsel that the Court is not required to follow the Agreement and afford the Defendant the opportunity to withdraw its plea; and (c) advise the Defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the Defendant than the Agreement contemplated. The Defendant further understands that if the Court refuses to accept any provision of this Agreement, neither party shall be bound by the provisions of the Agreement.

21.     The parties waive the preparation of a Pre-Sentence Investigation Report and intend to seek a sentencing by the Court immediately following the Rule 11 hearing in the absence of a Pre-Sentence Investigation Report. The Defendant understands that the decision whether to proceed with the sentencing proceeding without a Pre-Sentence Investigation Report is exclusively that of the Court. In the event the Court directs the preparation of a Pre-Sentence Investigation Report, the USAO-DE will fully inform the preparer of the Pre-Sentence Investigation Report and the Court of the facts and law related to the Defendant's case.

<u>BREACH OF AGREEMENT</u>

22.     If during the Term, the Defendant (a) commits any felony under United States federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information; (c) fails to cooperate as set forth in Paragraphs 8 and 9 of this Agreement; (d) commits any acts that, had they occurred, would constitute health care fraud or a false statement in relation to a health care matter; or (e) otherwise fails specifically to perform or to fulfill completely each of the Defendant's obligations under the Agreement, regardless of whether the USAO-DE becomes aware of such a breach after the term of the Agreement, the Defendant shall thereafter be subject to prosecution for any federal criminal violation.  Determination of whether the Defendant has breached the Agreement and whether to pursue prosecution of the Defendant shall be in the USAO-DE's sole discretion. Any such prosecution may be premised on information provided by the Defendant. Any such prosecution relating to the conduct described in the attached Statement of Facts or relating to conduct known to the USAO-DE prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Defendant, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term

plus one year. Thus, by signing this Agreement, the Defendant agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year. The Defendant gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution or action, except to the extent that such defenses existed as of the date of the signing of this Agreement. In addition, the Defendant agrees that the statute of limitations as to any violation of federal law that occurs during the term of the cooperation obligations provided for in Paragraph 8 of the Agreement will be tolled from the date upon which the violation occurs until the earlier of the date upon which the USAO-DE is made aware of the violation or the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

23.     In the event the USAO-DE determines that the Defendant has breached this Agreement, the USAO-DE agrees to provide the Defendant with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty (30) days of receipt of such notice, the Defendant shall have the opportunity to respond to the USAO-DE in writing to explain the nature and circumstances of such breach, as well as the actions the Defendant has taken to address and remediate the situation, which explanation the USAO-DE shall consider in determining whether to pursue further prosecution of the Defendant.

24.     In the event that the USAO-DE determines that the Defendant has breached this Agreement: (a) all statements made by or on behalf of the Defendant, or the Related Health Care Parties to the USAO-DE or to the Court, including the Information and the Statement of Facts, shall be admissible in evidence in any and all criminal proceedings brought by the USAO-DE against the Defendant; and (b) the Defendant shall not assert any claim under the United States

15

Constitution, Rule 1 1(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Defendant prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Defendant, will be imputed to the Defendant for the purpose of determining whether the Defendant has violated any provision of this Agreement shall be in the sole discretion of the USAO-DE.

25.    The Defendant acknowledges that the USAO-DE has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Defendant breaches this Agreement and this matter proceeds to judgment. The Defendant further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

COMPLETE AGREEMENT

26.    This document states the full extent of the Agreement between the parties. There are no other promises or agreements, express or implied. Any modification of this Agreement shall be valid only if set forth in writing in a supplemental or revised plea agreement signed by all parties.

16

AGREED:

FOR FAST CARE MEDICAL AID UNIT, LLC,

Mohammud Zubair
Board Authorized Representative, Fast Care Medical Aid Unit, LLC

Eugene J. Maurer, Jr.
Counsel for Defendant

FOR THE UNITED STATES OF AMERICA:

DAVID C. WEISS

United States Attorney
District of Delaware

Robert F. Kravetz
Assistant United States Attorney

Jennifer L. Hall
Assistant United States Attorney

Dated: November 30, 2018

**AND NOW**, this _30_ day of _November_, 2018, the foregoing Memorandum of Plea Agreement is hereby (accepted) (rejected) by this Court.

HONORABLE RICHARD G. ANDREWS
UNITED STATES DISTRICT COURT JUDGE

EXHIBIT I

CERTIFICATE OF CORPORATE RESOLUTIONS

A copy of the executed Certificate of Corporate Resolutions is annexed hereto as

"Exhibit 1."

## JOINT UNANIMOUS WRITTEN CONSENT
## OF THE
## MEMBERS AND MANAGERS OF
## FAST CARE MEDICAL AID UNIT, LLC

The undersigned, being all of the members and managers of Fast Care Medical Aid Unit, LLC., a Delaware limited liability company (the "Company"), in lieu of holding meetings of the Members and Managers, do hereby take the following actions and approve and adopt the following resolutions by written consent (the "Corporate Resolutions") without a meeting pursuant to Sections 18-302(d) and 18-404(d) and Title 6 of the Delaware Code and the Company's Operating Agreement, with the same force and effect as if such resolutions were approved and adopted at duly constituted meetings of the Members and Managers:

WHEREAS, the Company has been engaged in discussions with the United States Attorney for the District of Delaware ("USAO-DE") regarding its investigation into health care fraud, the agreed-upon facts of which are set forth in Exhibit B to the attached Plea Agreement (the "Plea Agreement"); and

WHEREAS, in order to resolve the matters that are the subject of the Investigation, the USAO-DE and the Company have reached a Plea Agreement, which incorporates the Corporate Resolutions as Exhibit A;

WHEREAS, the terms of the Plea Agreement require, among other things, that the Company agree to enter a guilty plea to a violation of Title 18, United States Code, Sections 1347 and 2;

NOW, THEREFORE, BE IT

RESOLVED, that Mohammad Zubair be, and he hereby is, appointed as the Company's Attorney-in-Fact with full power of substitution and with full power and authority to do all things necessary on behalf of the Company to finally resolve the matters with the DOJ and the U.S. Attorney, including but not limited to retaining counsel to represent the Company and appearing in court to enter a guilty plea on behalf of the Company as contemplated by the Plea Agreement; and be it

FURTHER RESOLVED, that the Plea Agreement be, and the same hereby is, approved and adopted in all respects in substantially the form as set forth in Exhibit A attached hereto, with such immaterial modifications as may be approved by the Attorney-in-Fact in his sole discretion; and that any and all ancillary

documents, agreements or pleadings that may be contemplated by or in furtherance of the Plea Agreement or the final resolution of the Investigation be, and they hereby are, approved and adopted in all respects as the act and deed of the Company; and be it

FURTHER RESOLVED, that the Attorney-in-Fact be, and hereby is, authorized and directed, in the name and on behalf of the Company, to execute the Plea Agreement and any ancillary documents, agreements or pleadings that are contemplated by or in furtherance of the Plea Agreement or the final resolution of the Investigation, and to deliver the same to the DOJ and the U.S. Attorney, such execution and delivery conclusively to evidence the due authorization and approval thereof by the Company; and be it

FURTHER RESOLVED, that the Attorney-in-Fact be, and hereby is, authorized and directed, in the name and on behalf of the Company, to execute and deliver, or cause to be executed and delivered, such additional or other agreements, documents, certificates and instruments, and to take any and all steps and to do all things that they may deem necessary or advisable in order to effect the purposes of each and all of the foregoing resolutions, and to pay or authorize the payment of any and all fines, forfeitures, fees, costs and expenses in connection therewith; and be it

FURTHER RESOLVED, that any actions taken by the Attorney-in-Fact and any Members, Managers, attorneys or agents of the Company prior to the date of this meeting that are within the authority conferred hereby are hereby ratified, confirmed and approved in all respects as the acts and deeds of the Company; and be it

FURTHER RESOLVED, this joint unanimous written consent is effective as of the 29th day of November, 2018.

Zahid Aslam

Mohammad Zubair

The Aslam Irrevocable Life Insurance Trust

By: _____

Mohammad Zubair, Trustee

EXHIBIT 2

STATEMENT OF FACTS

If this matter would have proceeded to trial, the United States would have presented the following evidence:

**A.      Background of the Medicare Program**

The Medicare Program ("Medicare) is a federal health insurance program that provides health care services for persons 65 and older and other qualified disabled persons.    Under Medicare, the United States Government pays certain covered medical expenses for eligible persons.    Part B of the Medicare program covers payments for physician services.    Medicare will only reimburse health care providers for services that are medically necessary for treatment of a specific diagnosis.

In order to be eligible to receive payment from Medicare, health care providers must have a recognized provider number ("NPI number") and must be enrolled in the Medicare program through the filing of an acceptable application.    To receive reimbursement from Medicare, health care providers must file a claim for payment on a form known as a "Health Insurance Claim Form."    The Health Insurance Claim Form includes information such as the beneficiary's name and address, the date and type of service, the place of service, a diagnosis code indicating the patient's diagnosis, the amount billed by the provider, and other information.

Absent certain limited exceptions not relevant in this case, under Medicare rules, a physician cannot submit a claim for reimbursement under his or her own NPI number unless the physician either personally performed the service or provided appropriate supervision over another practitioner (for example, a nurse practitioner or a physician assistant) licensed to perform the service.

Depending on the type of service and state regulations, a physician supervisor may not be required to be physically present when a service is being furnished to a patient by a non-physician practitioner. However, in order to use a physician's NPI number to bill Medicare for services performed by non-physician practitioner, the physician must provide "direct supervision" over the service, which means that the physician must be present in the office suite and immediately available to provide assistance and direction throughout the time the aide is performing service. If the physician does not directly supervise the performance of the service, the service must be billed under the non-physician practitioner's NPI number.

Medicare only reimburses physician assistant and nurse practitioner services at 85% of the scheduled fee amount for the same service if billed under the physician's NPI number.

**B.     False Billing Using the NPI Numbers of Doctor A and Doctor B.**

Fast Care Medical Aid Unit, LLC ("Fast Care") is a Delaware limited liability company that was established on or about April 12, 2012. Fast Care owns and operates multiple walk-in medical centers in Delaware and Maryland doing business as "Got-A-Doc Walk-In Medical Centers."

In November 2013, federal agents first learned that Fast Care was submitting Medicare claims using the NPI number of a physician, Doctor A, who neither performed the medical services nor provided direct supervision over the performance of the services. In most cases, the medical services were provided by a physician assistant and should have been billed at a lower rate under Medicare rules.

Between June 4, 2013, and December 15, 2013, Fast Care submitted 521 claims to Medicare under the NPI number of Doctor A for services that Doctor A did not perform or

supervise, for a total billed amount of $106,857.00. Medicare paid a total of $35,081.42 on the Doctor A claims.

During the investigation, agents also learned that Fast Care was billing under the NPI number of Doctor B for services that Doctor B did not perform or supervise. As with the services billed under Doctor A, in many cases the services had been rendered by a physician assistant and should have been billed at a lower rate under Medicare rules.

Between November 2013 and October 2017, Fast Care submitted a total of 3,770 claims to Medicare under the NPI number of Doctor B for services that Doctor B did not perform or supervisor, for a total billed amount was $576,750.00. Medicare paid a total of $185,683.33 on the Doctor B claims.

Thus, the total amount of illegal claims billed to Medicare by Fast Care for services not rendered by Doctors A or B was $683,607.00, and the total amount paid on those claims was $221,484.75